IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Gregston Marshall,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | 1:15cv269 (TSE/JFA) |
| | ) | |
| **Larry Edmonds,** | ) | |
| **Respondent.** | ) | |

MEMORANDUM OPINION

     Gregston Marshall, a Virginia inmate proceeding pro se, has filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions

entered in the Circuit Court of the City of Portsmouth, Virginia. On August 14, 2015,

respondent filed a Rule 5 Answer accompanied by a Motion to Dismiss and supporting brief.

Dkt. Nos. 16, 17, 19. Petitioner was given the opportunity to file responsive materials, pursuant

to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has filed a response. Dkt. No. 26.

Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's

Motion to Dismiss must be granted, and the petition must be dismissed.

**I. Background**

     Petitioner is detained pursuant to a final judgment of the Circuit Court for the City of

Portsmouth, entered February 15, 2012. Pursuant to a plea agreement, petitioner pled guilty to

two counts of forcible sodomy and two counts of rape. Case No. CR11-1075; See Dkt. No. 19,

Exs. A(2) & A(4). In exchange for petitioner's guilty plea, the Commonwealth of Virginia

agreed to nolle prosequi seven other charges: four counts of aggravated sexual battery by a

parent and three counts of indecent liberties (custodial). Dkt. No. 19, Ex. A(2). The trial court

sentenced petitioner to eighteen (18) years of active incarceration for the four charges he was

convicted of. Dkt. No. 19, Ex. A(4).

At the December 6, 2011 plea hearing in the Portsmouth Circuit Court, the investigating

officer, Detective A. Mannings testified regarding the petitioner's behavior between June 1, 2011

and June 22, 2011:

> On or about June 1, 2011, and through June 22, 2011, Gregston Marshall engaged in various sexual acts with his daughter, [T.M.],[1] against her will, by force, threat, [or] intimidation.  The act[s] began when Gregston Marshall discovered naked photos of his daughter on her cell phone.  He confronted her about the photos and threatened to tell her mother, but did not engage in any act.
>
> Several days later, he approached her and told her that he would tell her mother about the photos, and that she would get in trouble with her mother and the police if she did not agree to have sex with him.  On that occasion, [T.M.] told Gregston Marshall that she did not want to have any sex with him, but Gregston Marshall proceeded to pull down her pants and insert his tongue into her vagina and had sex with her by placing his penis into her vagina.
>
> During the incident, [T.M.] was crying and tried to push Gregston Marshall off of her.  Afterwards, Gregston Marshall promised her that he would – that this would not happen again.
>
> A second occasion arose when Gregston Marshall again confronted [T.M.] and made threats in regard to photos.  [T.M.] told him that she did not want to have sex with him again and that he promised this would not happen again.  Despite that, Gregston Marshall pulled her pants down and put his tongue inside her vagina and had sex with her by placing his penis in her vagina.  She was crying and tried to push him off again.
>
> On June 22nd Gregston Marshall took [T.M.] to the bedroom and apologized to her for what he had done.  [T.M.]'s mother became suspicious and confronted her daughter to determine what was going on and contacted the police.
>
> Gregston Marshall is forty-three years old.   [T.M.] is his fourteen-year-old daughter.  At the time during the acts described, Gregston Marshall was acting as a parent in his custodial and supervisory capacity.  This incident occurred within the City of Portsmouth or within 300 yards of the city boundaries.

Dkt. No. 19, Ex. A(3) [Dec. 6, 2011 Tr., pp. 17-18].  The trial court also admitted into evidence

transcripts of telephone conversations that the petitioner had with his wife, in which petitioner

implicitly admitted that he sexually assaulted his daughter.  Id. at 19-29.  Prior to accepting

petitioner's guilty plea, the trial court questioned petitioner regarding the voluntariness of his

plea and instructed petitioner to speak to his attorney if he did not understand any of the trial

---

[1] Because the victim was a minor at the time of the offenses, she will be referred to by her initials.

court's questions. Id. at 9. Petitioner averred that he fully understood the eleven (11) offenses

he had been charged with, and that he had fully discussed his case with his trial counsel. Id. at

10-11. Petitioner confirmed to the court that he was entering the plea agreement freely and

voluntarily, and he admitted that he was doing so because he was "in fact, guilty." Id. at 11-12.

Petitioner also averred several times that he was "entirely satisfied" with his trial counsel. Id. at

15; see also Dkt. No. 19, Ex. A(2).

Subsequent to entering the guilty plea, petitioner appealed his convictions to the Virginia

Court of Appeals contending that the trial court erred in sentencing him to eighteen (18) years of

active incarceration. The Virginia Court of Appeals denied his petition for appeal on September

25, 2012. Rec. No. 0378-12-1. Petitioner did not seek a further appeal of that result by the

Supreme Court of Virginia.

After pursuing his direct appeal, petitioner then timely filed a petition for a writ of habeas

corpus in the Circuit Court for the City of Portsmouth on February 25, 2013. Case No. CL13-

000851. In his state habeas case, petitioner made the following claims:

> (1)(A)(i) Trial counsel was ineffective because he failed to test the
> Commonwealth's advice.
>
> (1)(A)(ii) Trial counsel was ineffective for failing to prepare for trial and
> interview the victim.
>
> (1)(A)(iii) Trial counsel was ineffective for failing to warn the victim of the
> immigration risks associated with pleading guilty.
>
> (1)(B) The petitioner was denied his right to appeal.
>
> (1)(C) The petitioner was subjected to double jeopardy.
>
> (1)(D) It is cruel and unusual punishment to deport petitioner based on his
> conviction.
>
> (2)(A) The petitioner's plea of guilty was unlawfully induced.
>
> (2)(B) Trial counsel's failure to advise the petitioner of the immigration
> consequences of his guilty plea precluded the petitioner from making an
> informed decision in regards to perfecting a proper appeal to the charge and
> convictions.

3

(2)(C) Trial counsel was ineffective because he did not advise the petitioner that his deportation would prevent him from complying with the terms of his probation after his release from prison.

(2)(D) The petitioner's convictions subject the petitioner to cruel and unusual punishment when he did not know at the time he pled guilty that he would be deported.

(3) The prosecutor hid from the petitioner that he would be deported as a result of his convictions.

(4) The petitioner's guilty plea was not knowing and voluntary.

The Circuit Court dismissed the habeas petition by order dated November 15, 2013. The Supreme Court of Virginia subsequently and summarily denied petitioner's request for appeal on January 15, 2015. Rec. No. 140239.

On or about February 23, 2015, petitioner filed the instant petition, wherein he challenges his convictions on the following grounds:

(1) Petitioner's Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to inform petitioner of the immigration consequences of his guilty plea.

(2) Petitioner's Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to conduct any investigations and failed to interview the victim.

(3) Petitioner's Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to prepare for trial.

(4) Petitioner's right to Due Process under the Fifth and Fourteenth Amendments was violated when the trial court failed to ensure the petitioner was aware of the immigration consequences of his guilty plea.

## II. Exhaustion

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. Failure to exhaust all claims requires dismissal of the complaint to allow the petitioner to present his claims first to the appropriate state courts before pursuing his federal habeas remedy. See 28 U.S.C. § 2254(b); Granberry v. Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). To comply with the

4

exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner must first have presented the same factual and legal claims raised in his federal petition to the Supreme Court of Virginia on direct appeal, or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995).

To the extent a claim has been exhausted through presentment to the state courts, it must have asserted a clear, cognizable federal law ground upon which a federal court may subsequently be able to exercise jurisdiction. The federal claims must have been presented "face-up and squarely" to the state courts in order to be properly exhausted. Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994); see also Duncan, 513 U.S at 365-66 ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.).

Petitioner has exhausted Claims 1, 2, and 3 because he presented these claims to the Supreme Court of Virginia in his appeal of the circuit court's dismissal of his state habeas petition. Petitioner has failed to exhaust Claim 4 because he did not raise the issue on direct appeal nor has this issue been presented to the Supreme Court of Virginia.

### III. Procedural Default

Where a state court has determined that a claim has been procedurally defaulted, its finding is entitled to a presumption of correctness on federal habeas corpus review, provided two foundational requirements are met. Harris v. Reed, 489 U.S. 255, 262-63 (1989); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988) (citing 28 U.S.C. § 2254(d)). First, the state court must have relied explicitly on the procedural ground to deny petitioner relief. Harris, 489 U.S. at

260-63. Second, the state procedural rule relied on to default petitioner's claim must be an independent and adequate state ground for denying relief. Id. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991). When these two requirements have been met, federal courts may not review the barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260.

If it is clear that a claim asserted in federal habeas review has never been raised in state court, but would presently be deemed procedurally defaulted under clearly established, regularly enforced state law, then, absent a showing of cause and for the default and prejudice arising from the claim, that claim must be deemed simultaneously exhausted and procedurally defaulted in federal habeas review. Gray v. Netherland, 518 U.S. 152, 161-62 (1996).

i. Claim 4

In Claim 4, petitioner argues that his due process rights were violated when the trial court failed to ensure that petitioner was aware of the immigration consequences of his guilty plea. In his Motion to Dismiss, respondent argues that Claim 4 is procedurally defaulted because petitioner did not exhaust the claim by raising the issue during his direct appeal. When petitioner raised this claim in his state habeas proceeding, the state habeas court ruled that the claim was procedurally defaulted under Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974) because he had failed to raise the issue on direct appeal. Dkt. No. 19, Ex. D at 6-7.

However, 28 U.S.C. § 2254(b)(2) now permits a federal court, in its discretion, to deny a habeas corpus claim on the merits despite the applicant's failure to exhaust available remedies in state court. See Swisher v. True, 325 F.3d 225, 232-33 (4th Cir. 2002), cert. denied, 539 U.S. 971 (2003) (affirming district court's discretionary decision to elect to deny habeas corpus relief on the merits pursuant to § 2254(b)(2), although claim was "clearly unexhausted"). Here, then, in deference to petitioner's pro se status, the Court will not further belabor the issue of

exhaustion and procedural default, and will consider petitioner's claim of ineffective assistance on the merits.

## IV. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's adjudications were contrary to, or an unreasonable application of, clearly established federal law, or were based on an unreasonable determination of the facts presented at the trial. 28 U.S.C. § 2254(d)(1)-(2). This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits. Burt v. Titlow, 134 S. Ct. 10, 16 (2013). Under this standard, for a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." Williams, 529 U.S. at 413.  Importantly, this standard of reasonableness is an objective one, and does not allow a federal court to review simply for plain error.  Id. at 409-10; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  In addition, a federal court should review the state court determination with deference; a federal court cannot grant the writ simply because it concludes that the state court incorrectly determined the legal standard.  See Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (internal citations omitted).  A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'"  Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

   i. Ineffective Assistance of Counsel Standard

   To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-pronged test established in Strickland v. Washington, 455 U.S. 668 (1984).  Under this test, a petitioner must prove both that his attorney's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and that this performance prejudiced the outcome of petitioner's trial.  Strickland, 466 U.S. at 687.  To meet the second prong, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  The two prongs, deficient performance and prejudice constitute "separate and distinct elements."  Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994).  Therefore, a court can appropriately dismiss an ineffective assistance of counsel claim on either prong.  Strickland, 466 U.S. at 697; see also Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citations omitted) ("Without proof of both deficient performance and prejudice to the defendant, we concluded it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the

8

result of the proceeding unreliable, and the sentence or conviction should stand."). A court reviewing a claim of ineffective assistance of counsel must presume that counsel acted competently, and should determine the merits of the claim based on the information available to the attorney at the time of the trial. See, e.g., Bell, 535 U.S. at 695; Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

The two-part Strickland test also "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). In the context of a guilty plea, the "performance" prong of the Strickland test "is nothing more than a restatement of the standard of attorney competence already set forth in . . . McMann v. Richardson, 397 U.S. 759, 771 (1970)," that is, whether the advice of counsel "was within the range of competence demanded of attorneys in criminal cases." Id. at 58-59 (internal citations omitted). With regard to the "prejudice" prong in the context of a guilty plea, a petitioner must show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000).

In reviewing a petitioner's claim of ineffective assistance of counsel regarding a guilty plea, "the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any finding made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Declarations made "in open court carry a strong presumption of veracity," and "the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are the contentions that in the face of the record are wholly incredible." Id. at 74. Thus, absent clear and convincing evidence to the contrary, a defendant is bound by his representations at a plea colloquy concerning the voluntariness of the plea and the adequacy of his representation. Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001).

### V. Analysis

i. Claim 1

In Claim 1, petitioner alleges that trial counsel was ineffective because counsel failed to inform him of the immigration consequences of his guilty plea. Petitioner argues that had he been properly advised of those consequences, he would have rejected the plea agreement and proceeded to trial.

While petitioner may successfully establish that his trial counsel's performance was deficient, the state habeas court found that petitioner failed to establish that he was prejudiced by trial counsel's failure to advise him of the immigration consequences of his plea because petitioner failed to show that it would have been reasonable for him to reject the plea agreement and go to trial.[2] Specifically, the state habeas court found that petitioner actually received a substantial sentencing benefit by pleading guilty and that petitioner failed to show he would have prevailed on the original eleven (11) charges he would have faced had he gone to trial. The state habeas court concluded:

> The actual choice confronting the petitioner was whether to plead guilty to two counts of rape and two counts of rape [sic] and face a punishment of four life terms or go to trial on the original eleven charges (four counts of aggravated sexual battery by a parent, three counts of indecent liberties by a custodian, two counts of rape, and two counts of forcible sodomy) and face a potential punishment of four life terms, plus 95 years.

Dkt. No. 19, Ex. D at 13.

The state habeas court's conclusions are neither contrary to, nor an unreasonable application of, existing Supreme Court precedent, and they do not rest on an unreasonable

---

[2] Under Padilla v. Kentucky, 559 U.S. 356 (2010), petitioner may establish that his trial counsel was deficient when trial counsel failed to advise petitioner of the immigration consequences of his convictions prior to pleading guilty. However, "whether [petitioner] is entitled to [habeas] relief depends on whether he has been prejudiced," a matter that was not addressed by the Court in Padilla. Id. at 360.

finding of fact.   Petitioner fails to show that he was prejudiced by the absence of advice regarding the immigration consequences of his guilty plea, both because of the substantial sentencing benefit highlighted by the state court, and because he had absolutely no viable defenses for the eleven (11) charges against him had he gone to trial.  The second prong of the Strickland test, the "prejudice" inquiry, requires petitioner to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694; see also Meyer v. Branker, 506 F.3d 358, 369-70 (4th Cir. 2007) (finding that because petitioner received favorable treatment in the plea and had "virtually no chance to succeed on the merits at trial," he failed to show that an "objective defendant would have insisted on going to trial").   Accordingly, Claim 1 merits no federal habeas relief as the state habeas court's ruling is based on a reasonable interpretation of the facts and not contrary to established federal law.

     ii. Claims 2 and 3

In Claim 2, petitioner argues that trial counsel was ineffective for failing to conduct a full investigation and failing to interview the victim.  In Claim 3, petitioner argues that trial counsel was ineffective because he failed to prepare for trial.  The state habeas court addressed these claims and determined that petitioner had shown no valid reason to allow him to controvert his statements during the plea colloquy in which he stated that he was entirely satisfied with the services of his trial counsel. Dkt. No. 19, Ex. D at 14.  Petitioner is bound by his representations at the plea colloquy concerning the adequacy of his counsel. Dkt. No. 19, Ex. A(3) [Dec. 6, 2011 Tr.].

Specifically, during the plea colloquy, the trial court asked petitioner, "Are you entirely satisfied with the services of your lawyer?" and petitioner answered, "Yes." Id. at 15.  The trial

11

court then asked, "Do you have any complaints that you would like to make against anyone involved in this case? That could be the Police Department, Sheriff's Department, your lawyer, the prosecutor, including me as the judge." Again, petitioner answered, "No." Id.

Petitioner has presented no clear and convincing evidence to rebut or cast doubt on the representations and admissions he made under oath in the course of the plea colloquy that he was entirely satisfied with his counsel's services. This dooms his ineffective assistance of counsel claim on this ground. Beck, 261 F.3d at 396 (absent clear and convincing evidence to the contrary, a defendant is bound by his plea colloquy representations as to the adequacy of his counsel's representation).

The state habeas court's rejection of petitioner's ineffective assistance of counsel claim in this respect is based on a reasonable interpretation of the facts and not contrary to established federal law. Accordingly, habeas relief on this ground is unwarranted and Claims 2 and 3 must therefore be dismissed.

### iii. Claim 4

In Claim 4, petitioner argues that his right to Due Process under the Fifth and Fourteenth Amendments was violated when the trial court failed to ensure that petitioner was aware of the immigration consequences of his guilty plea. A defense attorney has a Sixth Amendment duty to properly advise his client of immigration consequences of his guilty plea under Padilla, 559 U.S. at 366; however, Padilla did not create a similar Fifth Amendment due process right to be advised by the trial court of the immigration consequences of a guilty plea. Accordingly, a Virginia trial court conducting a plea colloquy must advise the defendant of the direct consequences of his plea, but the court need not advise the defendant of the collateral

immigration consequences of his guilty plea. See United States v. Nicholson, 676 F.3d 376, 381-82 & n.3 (4th Cir. 2012) (internal citations omitted) ("Padilla was based solely on the constitutional duty of defense counsel, and it does not speak to the duty of judges."); see also United States v. Rodriguez-Penton, 547 F. App'x 738, 740 (6th Cir. 2013), cert. denied, 134 S. Ct. 1781 (2014) ("The Court put the onus on counsel [to inform their clients of the immigration consequences to guilty pleas], not on sentencing judges."); United States v. Delgado-Ramos, 635 F.3d 1237, 1239-41 (9th Cir. 2011) (holding that because Padilla "sheds no light on the obligations a district court may have under Rule 11 and due process[,] . . . the district court did not err in failing to advise Delgado of the immigration consequences of his plea").

Petitioner has presented no persuasive facts or reasons to warrant federal habeas relief on this ground and Claim 4 must therefore be dismissed.

## VI. Conclusion

Because nothing in the state court record indicates that the state court decisions were contrary to, or an unreasonable application of, clearly established federal law, or involved an unreasonable determination of the facts, this petition will be dismissed, with prejudice. An appropriate Order shall issue.

Entered this __23rd__ day of __December__ 2015.

Alexandria, Virginia

_/s/_

T. S. Ellis, III
United States District Judge